UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Big Woods BBQ LLC, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> William Moore, *et al.*, <br><br> *Defendants*. | No. 24 CV 11776 <br><br> Judge Lindsay C. Jenkins |

**Memorandum Opinion and Order**

Plaintiffs Big Woods BBQ LLC and its owner, Dewayne Woods, filed suit against William Moore, Tiffany Henyard, and the Village of Dolton, asserting claims both under the United States Constitution and Illinois state law. [Dkt. 22.] Defendant Village of Dolton filed a motion to dismiss, [dkt. 37], which the Court grants in its entirety, giving Plaintiffs an opportunity to amend.

**Background**

Woods owned Big Woods BBQ in Dolton, Illinois. [Dkt. 22, ¶ 3.][1] Big Woods had been a tenant in a building on South Martin Luther King ("MLK") Drive for several years before the events in question. [*Id.*, ¶7.] Problems began when Tiffany Henyard, then-Mayor of the Village of Dolton, together with the Village, placed "no parking" signs on MLK Drive and ticketed Woods and patrons of Big Woods BBQ. [*Id.*, ¶¶ 4, 9–10.]

In mid-2023, Woods met with William Moore, then-Village of Dolton Department Head, about the status of his business license which "was lingering." [*Id.*, ¶¶ 3, 11.] Moore told Woods he would receive his license shortly, but in early 2023 Henyard refused to approve the license and Big Woods BBQ was shut down. [*Id.*, ¶¶ 12–13.][2]

---

[1] For the Village of Dolton's motion to dismiss, the Court accepts as true all well-pled allegations set forth in Plaintiffs' Second Amended Complaint [Dkt. 22] and draws all reasonable inferences in their favor. *See Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019). In setting forth the facts at the pleading stage, the Court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

[2] The timing of when Woods spoke with Moore and when Henyard denied the license is not clear. While it has no bearing on the outcome of the Village's motion to dismiss, the Court assumes that Henyard refused to approve the license after Moore told Woods he would soon be receiving his license.

1

At some point, inspections were performed, and Big Woods BBQ passed. [*Id.*, ¶ 14.] Plaintiffs then made another run at obtaining a business license in November 2023. [*Id.*, ¶ 15.] They received one in February 2024, but it was backdated to April 2023. [*Id.*, ¶16.] License in hand, Woods spent a substantial amount of money to purchase inventory and run his business. [*Id.*, ¶¶ 17, 21.] But trouble was brewing. Woods was friends with Henyard's political adversaries, and Henyard told Woods he was on the wrong team. [*Id.*, ¶¶ 8, 18.] Other Village employees told Woods he needed to support Henyard. [*Id.*, ¶ 18.]

In March 2024, Moore told Woods that Henyard was revoking his business license. [*Id.*, ¶ 19.] While Plaintiffs never received anything in writing revoking the business license, never received notice from the Village, and the Village never prosecuted Plaintiffs for any violation, Woods apparently stopped running his business, and eventually filed for bankruptcy. [*Id.*, ¶¶ 20, 24–25, 32.] There was no basis for the business license to be revoked, and Woods did everything the Village requested of him. [*Id.*, ¶¶ 23, 28.] Plaintiffs allege they were denied the license because of Woods's political allegiance. [*Id.*, ¶¶ 27, 31.]

In their Second Amended Complaint, Plaintiffs bring a *Monell* claim (Count III), and two state law claims: one for tortious interference with business prospects against Henyard and Moore (Count II), and another for breach of contract (Count IV). Lastly, Plaintiffs bring an indemnification claim (Count V).[3]

The Village of Dolton moves to dismiss. [Dkt. 37.] For somewhat different reasons than put forth by the Village, the Court dismisses all Plaintiffs' claims.

## Standard of Review

"To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (cleaned up). This occurs when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 999 (N.D. Ill. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted)).

## *Monell* Claim

Plaintiffs bring a *Monell* claim against the Village of Dolton. A *Monell* claim challenges the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

---

[3] The Second Amended Complaint does not contain a Count I, and its claims appear out of order.

policy." *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 694 (1978). "For a Monell claim to survive a motion to dismiss, a plaintiff must plead facts that plausibly suggest" four factors are met. *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023). First, that he was deprived of a constitutional right; second, that the deprivation can be traced to some municipal action (*i.e.* a policy or custom); third, that the policy or custom demonstrates municipal fault (*i.e.* deliberate indifference); and fourth, that the municipal action was the moving force behind the federal-rights violation. *Id.*

Related to the second factor, the Seventh Circuit has recognized "three types of municipal action that can support municipal liability under § 1983: '(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.'" *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022) (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)). Although Plaintiffs' complaint does not shed much light on the issue, it appears they are proceeding down the second path, attempting to allege a widespread practice.[4]

While Federal Rule of Civil Procedure 8(a)—not some higher standard— applies to causes of action for municipal liability, *White v. City of Chicago*, 829 F.3d 837, 843–44 (7th Cir. 2016), when it comes to alleging a widespread policy or custom, the plaintiff must allege others were impacted by the same policy that caused his injury. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (affirming dismissal of *Monell* claim where plaintiff failed to allege that police officers took similar actions against other people). Where a plaintiff's allegations do not permit an inference that the violation was caused by a policy or practice that impacted others, courts have dismissed *Monell* claims at the motion to dismiss stage. *Walker v. City of Chicago*, 596 F. Supp. 3d 1064, 1074 (N.D. Ill. 2022) (explaining that in many instances, the nature and specifics of the "underlying constitutional claim demand that more than one instance is needed to make out a plausible inference for the existence of a widespread but un-written policy or custom with the force of law"). Plaintiffs need not "identify every other or even one other individual" who similarly suffered as a result of the alleged municipal practice. *White*, 829 F.3d at 844. But Plaintiffs must allege that their injury was the result of a practice that affected more than just them. *Gill*, 850 F.3d at 344. "[A] few sporadic examples of inappropriate behavior will not suffice." *Thomas*, 74 F.4th at 524 (citation and internal quotation marks omitted).

---

[4] Plaintiffs' argument appears to shift slightly in their opposition brief when they contend that Henyard and Moore had final policymaking authority. [Dkt. 40 at 5.] But that assertion appears nowhere in their complaint. The Seventh Circuit has repeatedly held that Plaintiffs cannot amend their complaint through briefing. *See Pirelli Armstrong Tire Corp. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). Therefore, the Court does not consider that unsupported theory of relief.

3

To satisfy the deliberate indifference element, Plaintiffs must allege that the Village was "aware of the risk created by the unlawful widespread custom or practice and failed to take appropriate steps protect plaintiffs." *Fix v. City of Chicago*, 2022 WL 93503, at *3 (N.D. Ill. Jan. 10, 2022). "The [Village's] continued adherence to an approach that it knows or should know has failed to prevent [unconstitutional] conduct … may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability." *Williams-Saddler v. Lancaster*, 2024 WL 1677407, at *3 (cleaned up) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997)).

There are several issues with Plaintiffs' *Monell* claim. To start with, Plaintiffs must allege an injury to their constitutional rights. *Thomas*, 74 F.4th at 524. Here, Plaintiffs claim the Village violated their due process and property rights under the Fourteenth Amendment. [Dkt. 22, ¶¶ 31, 43.][5] Plaintiffs' Second Amended Complaint alleges that the Village denied them procedural due process by giving them improper notice about the revocation of their business license, failing to prosecute them, and failing to provide a hearing. [Dkt. 22, ¶¶ 24–26.] Second, Plaintiffs also allege that the Village denied them substantive due process by interfering with their use of the leased storefront. [Dkt. 22, ¶ 30.]

While the Fourteenth Amendment's due process clause "provides for procedural protections, such as notice and an opportunity to be heard, when the government deprives citizens of life, liberty or property," the plaintiff "must first show it has a protected liberty or property interest with which the government has interfered." *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 592 (7th Cir. 2021). The Court can't locate any support for the existence of a constitutionally-protected property interest in using leased space to operate a business. The parties don't offer any. Perhaps recognizing this deficiency, Plaintiffs' response brief pivots to a different argument in opposition to dismissal—that they have a property interest in receiving and retaining a business license. [Dkt. 40 at 5.]

As noted in footnote 4, it is axiomatic that a plaintiff cannot amend his complaint through briefing. *See Pirelli Armstrong Tire Corp.*, 631 F.3d at 448. Even if the court were inclined to consider the amended arguments, there is a bigger roadblock. "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *FKFJ, Inc.*, 11 F.4th at 574. If the Village has discretion to give and retract business licenses, then, as a matter of law, Plaintiffs have no constitutional right protected by the Fourteenth Amendment. Plaintiffs' complaint does not speak to this issue one way or the other, likely because their pleading doesn't allege a property interest in the business license to begin with.

---

[5] Plaintiffs also allege that their Fourth and First Amendment due process rights were violated, [*id.*, ¶31] but do not explain how either Amendment can support such a theory of relief.

Because Plaintiffs' complaint fails to allege a substantive due process deprivation, the Court need not consider their procedural due process claim. *Id.*

Even if the Court could excuse these deficiencies (it cannot), there remains at least one more issue with Plaintiffs' *Monell* claim. Plaintiffs fail to allege the Village was deliberately indifferent to its unconstitutional policy of denying or revoking business licenses depending on political patronage to Henyard. Nowhere in their complaint do Plaintiffs allege that the Village of Dolton was on notice of the risk presented by its policies at the time it revoked Plaintiffs' business license. While Plaintiffs' complaint cites seven cases allegedly involving the denial or revocation of business licenses, it does not explain how any of the cases support the Village's awareness of discriminatory practices during the relevant time. [Dkt. 22, ¶42.] The complaint provides no information about the cases at all, not even a full citation. This is insufficient to state a *Monell* claim.

## Remaining Claims

Plaintiffs also assert claims for tortious interference with business prospects (Count II), breach of contract (Count IV), and for indemnification (Count V). All these claims are creatures of state law. To state a tortious interference claim under Illinois law, the plaintiff must allege "(1) plaintiff's reasonable expectancy of entering into a valid business relationship; (2) defendant's knowledge of that expectancy; (3) defendant's intentional and unjustifiable interference that induced or caused a breach or termination of the expectancy; and (4) damage to plaintiff resulting from defendant's conduct." *F:A J Kikson v. Underwriters Lab'ys, Inc.*, 492 F.3d 794, 800 (7th Cir. 2007).

There are many deficiencies with this claim. To name just one, Plaintiffs haven't alleged that the Village was aware of their outlay of costs in response to getting their business license in February 2024. *Id.* Put differently, there are no facts making it plausible to infer the Village's knowledge of any expectancy. Consequently, Plaintiffs have failed to state a claim for tortious interference.

Plaintiffs' breach of contract claim relies on a separate set of facts, involving Plaintiffs' provision of catered food for Village of Dolton events at some unspecified time. [Dkt. 22 at 8, ¶ 7.] The Village refused to pay for the food despite acknowledging the debt. [*Id.*, ¶¶ 8–9.] On July 18, 2024, Plaintiffs received a check dated August 7, 2023, but due to its age, the bank refused to accept it. [*Id.*, ¶ 11, 13.]

"Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (citation and internal quotation marks omitted). Missing from Plaintiffs' complaint are allegations demonstrating that they entered into a contract with the

5

Village, as opposed to some other entity, to provide catering for certain events. Assuming the contract was oral, they have also failed to allege any terms of the agreement. *Popovych v. Hamraev*, 2024 IL App (3d) 220503-U, ¶ 35 (explaining that plaintiffs alleging the existence of an oral contract must allege "sufficiently definite terms").

Plaintiffs' assertion that the Village "acknowledged the debt," [dkt. 22, ¶ 9], is no substitute for alleging that the Village acknowledged they were responsible to *pay* the debt. While Plaintiffs allege that they received a back dated and stale check, they do not allege who—the Village or some other entity—issued the check.[6] At minimum, Plaintiffs' breach of contract claim fails because Plaintiffs do not allege the existence of a valid and enforceable contract with the Village of Dolton.

Plaintiffs' indemnification claim also fails. They argue that if Henyard and Moore are found liable then the Village of Dolton is on the hook to pay any judgment because Henyard and Moore were acting in their official capacities. [*Id.*, ¶¶ 37–38.] Because Plaintiffs failed to state a claim against either Henyard or Moore, this claim cannot stand. *See, e.g.*, *Milsap v. City of Chicago*, 2018 WL 488270, at *9 (N.D. Ill. Jan. 19, 2018).

## Conclusion

A plaintiff usually receives at least one chance to fix deficiencies in a complaint, *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). Since Plaintiffs have not previously had the benefit of judicial review of their complaint, the Court grants Plaintiffs leave to amend their complaint should they wish to do so. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 518 (7th Cir. 2015).

Enter: 24 C 11776
Date: June 25, 2025

_____
Lindsay C. Jenkins
United States District Judge

---

[6] The Second Amended Complaint indicated a copy of the check was attached as an exhibit, but no exhibit was filed on the docket. [*Id.* at ¶ 11.]