66**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Dewayne Woods, *et al.*, *Plaintiffs*, v. Village of Dolton, *et al.*, *Defendants*. | No. 24-cv-11776 Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Dewayne Woods and his restaurant, Big Woods BBQ LLC, sued the Village of Dolton, Tiffany Henyard, and William Moore,[1] asserting claims both under the United States Constitution and Illinois state law. In their prior complaint, Plaintiffs raised a *Monell* claim and state law claims for tortious interference with business prospects and breach of contract. [Dkt. 22.][2] In June 2025, the court dismissed all claims against Defendants without prejudice. [Dkt. 43.]

In July 2025, Plaintiffs filed their third amended complaint, raising a First Amendment retaliation claim (Count I), a Fourteenth Amendment procedural due process claim (Count II), and a *Monell* claim (Count IV). [*Id.*, ¶¶ 1–41, 46–53.] They also renewed their Illinois state law claims for tortious interference with prospective business relations (Count III), breach of contract (Count V), and indemnification (Count VI). [Dkt. 49.] The Village moves to dismiss, which the court grants in part.

### I.  Background[3]

Woods owned Big Woods BBQ in Dolton, Illinois. [Dkt. 49, ¶¶ 1–3.] Throughout the events that led to this litigation, Henyard was the Village's mayor and Moore was a department head for the Village. [Dkt. 49, ¶¶ 4–5.] Woods had previously held a business license issued by the Village, but he supported unidentified political figures

---

[1]  Following two extensions of time for service, the court dismissed Defendant Moore from the case without prejudice for failure to timely effect service. [Dkt. 66]; Fed. R. Civ. Pro. 4(m).

[2]  Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

[3]  For the Village's motion to dismiss, the court accepts as true all well-pled allegations from Plaintiffs' third amended complaint [Dkt. 49] and draws all reasonable inferences in their favor. *Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

1

who were opposed to then-mayor Henyard. [*Id.*, ¶ 9–10.] The complaint alleges that Plaintiffs were "subject to harassment" including through the "installation of 'No Parking' signs and the issuance of citations to patrons of the business" in a "selectively targeted" manner. [*Id.*, ¶ 10–11.]

In April 2023, Woods alleges that he met with Moore to discuss his then-pending business license, and Moore assured Woods that the license would soon be approved. [*Id.*, ¶ 12-13.] Henyard, however, refused to grant the license, causing Woods to shutter his restaurant. [*Id.*, ¶¶ 13–14.]

Big Woods BBQ passed all Village inspections, *id.*, ¶¶ 15, 17, and Woods again applied for a business license in November 2023. [*Id.*, ¶ 16.] This time, the Village issued a license in February 2024, backdating it to April 2023. [*Id.*, ¶¶ 17–18.] Following this approval, Henyard and other Village employees told Woods that he was "on the wrong side" and needed to support Henyard. [*Id.*, ¶ 20.]

According to the complaint, the Village's business license application states that licenses may only be revoked "pending a hearing on charges of violations of the Dolton Municipal Code and/or Illinois laws." [*Id.*, ¶ 36.] Still, in March 2024, Moore informed Woods that his license was being revoked even though Woods never received any written notice of revocation, even though he had "complied with all regulatory and legal requirements," and even though no hearing was ever held regarding his license. [*Id.*, ¶¶ 21–24, 37.] Woods was eventually forced to close his business and file for bankruptcy. [*Id.*, ¶ 26.] Plaintiffs allege that the revocation was intended to punish Woods for supporting political candidates opposed to Henyard. [*Id.*, ¶¶ 9, 25.]

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims. To survive a motion to dismiss under Rule 12(b)(6), "a complaint's factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This occurs when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 999 (N.D. Ill. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted)). Although the court takes well-pleaded factual allegations as true, conclusory allegations are insufficient to avoid dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. Analysis

### A. First Amendment (Count I)

To state a First Amendment retaliation claim, (1) a plaintiff's activity "must have been protected by the First Amendment," (2) he "must have suffered a

2

deprivation that would likely deter future First Amendment activity," and (3) "his protected activity must be 'at least a motivating factor' in the defendants' actions. *Peraica v. Vill. of McCook*, 641 F. App'x 586, 589 (7th Cir. 2016). Political speech is "at the core of what the First Amendment is designed to protect." *Virginia v. Black*, 538 U.S. 343, 365 (2003). Such speech includes the endorsement of candidates for office, *see Sanders County Republican Central Committee v. Bullock*, 698 F.3d 741, 745 (7th Cir. 2012), as well as political management and campaigning. *Brown v. U.S. Civil Serv. Comm'n*, 553 F.2d 531, 534 (7th Cir. 1977) (citing *Elrod v. Burns*, 427 U.S. 347, 366 (1976)).

Vague descriptions of speech, however, are fatal to First Amendment retaliation claims. *Brooks v. University of Wis. Bd. of Regents,* 406 F.3d 476, 479–80 (7th Cir. 2005). "[W]ithout any elaboration, the speech that the plaintiff *thought* was protected might not be, and because the possibility that it is unprotected cannot be tested, the complaint should be dismissed." *Marmarchi v. Bd. of Trs. of Univ. of Ill.*, 715 F. App'x 529, 532 (7th Cir. 2017) (emphasis in original); *see also Marshall v. Lentini*, 2025 WL 2765738, at *5 (N.D. Ill. Sep. 26, 2025) (plaintiff cannot state a claim for retaliation without identifying his protected conduct and includes facts showing the claim is supported by more than just speculation)

This is where the complaint fails. Regarding what protected activity they engaged in, Plaintiffs allege only that Woods "was known to support political figures" who were opposed to Henyard. [Dkt. 49, ¶ 9; *see* Dkt. 65 at 3.] They do not state, for instance, which political figures Woods supported, what Woods said or how he otherwise expressed that support in some way, and why he was "known to" do so. His allegations, then, are simply too vague to establish the first or third elements of a retaliation claim, even at the pleading stage. *See Kyle v. Morton High Sch.*, 144 F.3d 448, 456 (7th Cir. 1998) (explaining that vague allegations of "political innuendo," for example, were insufficient). *Marshall*, 2025 WL 2765738, at *5 (a plaintiff is not required to provide a verbatim transcript of her remarks to state a retaliation claim, "but a complaint that never specifies what (if anything) the plaintiff said to allegedly cause an adverse action precludes the Court from assessing whether the speech is plausibly protected at all") (cleaned up).

Relevant to the second element of a retaliation claim, Plaintiffs do allege with specificity how Defendants acted adversely against them: ticketing restaurant customers, installing "No Parking" signs outside of the restaurant, and revoking the business license. [Dkt. 49, ¶ 10.] But without more factual detail, the third element has not been adequately alleged. That is, Plaintiffs must "plausibly explain what led him to believe his treatment was because of the protected activity." *Dorsey v. Williams*, 2022 WL 337192, at *1 (7th Cir. Feb. 4, 2022). And without information about what political expression or association Plaintiffs specifically engaged in, if any, the court has no facts from which to assess whether that activity was plausibly protected by the First Amendment, or more specifically was a "motivating factor" in the Defendants' actions. Count One is dismissed although without prejudice.

3

### B. Fourteenth Amendment (Count II)

The Fourteenth Amendment's due process clause "provides for procedural protections, such as notice and an opportunity to be heard, when the government deprives citizens of life, liberty or property," provided that a plaintiff can "show it has a protected liberty or property interest with which the government has interfered." *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 592 (7th Cir. 2021). The court previously dismissed Plaintiffs' due process allegations because they had pled neither a protected property interest in "using leased space" nor an entitlement in the business license. [Dkt. 43 at 4.] Because the last complaint failed to allege a substantive due process deprivation, the court did not reach Plaintiffs' procedural due process claim.

The third amended complaint sufficiently addresses this deficiency. Plaintiffs have clarified that the alleged procedural due process violation arises from the revoked license without process after it was issued in February 2024, and not its denial in the first place. [Dkt. 49, ¶¶ 29–37 (alleging that the Village issued Woods a business license but later revoked it without written notice or hearing, and without cause).]

It's true, as the Village emphasizes, that a benefit such as a business license "is not a protected entitlement if government officials may grant or deny it in their discretion." *FKFJ, Inc.*, 11 F.4th at 592. In *FKFJ, Inc.* for example, the Seventh Circuit affirmed summary judgment when the plaintiff had only a unilateral expectation of renewal of a business license where the relevant code granted officials the discretion to renew by providing that the licenses "may" be renewed upon proper application. *Id.* (explaining that the relevant code provision gave the clerk authority to approve applications for renewals, rather than mandating renewals when certain criteria were met.) Here, Plaintiffs do not merely allege that they expected renewal but were met with a discretionary denial. Instead, they allege that they were granted the business license in early 2024, and the Village later revoked it without following its own defined process for a revocation hearing. *FKFJ, Inc.* is therefore distinguishable, at least at the pleading stage.

The same goes for *Dyson v. City of Calumet City*, in which the court found that no property interest existed because the plaintiff failed to identify any "ordinance that dictates when and how a business license must be *issued*." 306 F. Supp. 3d 1028, 1041 (N.D. Ill. 2018). Relying on *Dyson*, the Village contends that Plaintiffs have only pled a unilateral expectation to the license, rather than a legitimate claim of entitlement. [Dkt. 68 at 4–5].

But when an interest "is revocable (or nonrenewable) only for cause, it *is* property for purposes of determining whether the state can deprive the licensee of it without according him due process of law." *Club Misty v. Laski*, 208 F.3d 615, 619 (7th Cir. 2000) (emphasis in original). The interest attaches "once [the license] is obtained." *Mary Jane Sweet Spot, LLC v. City of Blue Island*, 2024 WL 1363635, at

4

*7–8 (N.D. Ill. Mar. 29, 2024); *see also Pro's Sports Bar & Grill, Inc. v. City of Ctry. Club Hills*, 589 F.3d 865, 870 (7th Cir. 2009) (explaining that "once granted, an Illinois liquor license is a form of property within the meaning of the due process clause); *Frey Corp. v. City of Peoria, Ill.*, 735 F.3d 505 (7th Cir. 2013) (distinguishing between property interests that are created by statutory language that provide for-cause revocation processes and are therefore protected, and those that make revocation discretionary). The Village's arguments therefore miss the point, since Plaintiffs contest the license's revocation without process, not a denial in the first instance.

So, the Village's challenge to the procedural due process claim fails.

### C. *Monell* Claim (Count IV)

Plaintiffs renew their *Monell* claim against the Village. A *Monell* claim challenges the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 694 (1978). "For a *Monell* claim to survive a motion to dismiss, a plaintiff must plead facts that plausibly suggest" four factors are met: first, that he was deprived of a constitutional right; second, that the deprivation can be traced to some municipal action (*i.e.*, a policy or custom); third, that the policy or custom demonstrates municipal fault (*i.e.*, deliberate indifference); and fourth, that the municipal action was the moving force behind the federal-rights violation. *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023).

Because Plaintiffs' procedural due process claim survives, they meet the first element. Regarding the second requirement, the Seventh Circuit has recognized "three types of municipal action that can support municipal liability under § 1983: '(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.'" *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022) (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)).

Choosing the second path, Plaintiffs allege that the Village has a "custom and practice of issuing, denying, and revoking business licenses based on political loyalty to the Mayor." [Dkt. 46, ¶ 46.] To plead a "widespread practice," then, Plaintiffs must allege that others were impacted by the same policy that caused their injury. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (affirming dismissal of *Monell* claim where plaintiff failed to allege that police officers took similar actions against other people); *see Walker v. City of Chicago*, 596 F. Supp. 3d 1064, 1074 (N.D. Ill. 2022) (explaining that in many instances, the nature and specifics of the "underlying constitutional claim demand that more than one instance is needed to make out a

5

plausible inference for the existence of a widespread but un-written policy or custom with the force of law").

The third amended complaint lists seven civil lawsuits filed against the Village either in this District or in the Circuit Court of Cook County, with one sentence summaries that purport to show "political targeting or irregularities in municipal licensing." [Dkt. 49, ¶ 51.] Missing are details about the specific events at issue in those cases sufficient to plausibly allege a policy or custom. The summaries provided are barebones and the few facts that are offered suggest meaningful factual differences between those cases and this one. According to Plaintiffs, those cases involve the outright denial of a special use permit, the refusal to issue a business license, or withheld permits or licenses. [Dkt. 49, ¶ 49(a), (c)–(f).] Only one, *Pablo's Cafe & Bar v. Village of Dolton*, arguably mirrors the alleged violation at issue in this case—that the Village revoked a license "without due process, based on unsubstantiated allegations, despite [that plaintiff's] substantial investment in the property and efforts to comply with all applicable laws.") [*Id.*, ¶ 49(b).] Still, it is only one example and "allegations of a few sporadic examples of inappropriate behavior will not suffice." *Thomas*, 74 F.4th at 524.

Also missing are facts or allegations about whether any case resulted in a *finding* of liability. If the allegations haven't been tested through litigation, they are insufficient to make a policy or practice claim plausible. *See Harris v. City of Chicago*, 2025 WL 2044020, at *5 (N.D. Ill. July 21, 2025). Plaintiffs' allegations leave "completely open the question of whether any of this alleged misconduct was confirmed through a verdict," and as courts in this district have observed, a finding of liability either by judge or jury could confirm the existence of unconstitutional practices. *Id.*, at *6 (citing *Arquero v. Dart*, 587 F. Supp. 3d 721, 730 (N.D. Ill. 2022) (finding that plaintiff's citation "to four lawsuits against the Sheriff's Department for a policy or practice of detaining individuals beyond their release date" could not establish a policy or practice because "[a] lawsuit is an allegation" so it only "establishes that other people have made accusations"); *Darko v. City of Chicago, Illinois*, 2024 WL 2209675, at *4 (N.D. Ill. May 15, 2024) (same); *Hernandez v. Nielson*, 2002 WL 31804788, at *1 (N.D. Ill. Dec. 13, 2002) (finding that settlement of two cases alleging use of excessive force could not "show a widespread practice" because "there was never any finding of liability"). Here, the amended complaint is silent about the outcomes of any of case.[4]

Equally problematic is the absence of factual allegations about when the alleged constitutional violations occurred. This means that the court "cannot

---

[4] Though Plaintiffs provide no information about the status of any of the listed cases, it is possible that some of the cases resulted in settlements. But settlements are not afforded the same status as verdicts, which leaves the court with nothing more than allegations that "say nothing about an organization's actual policies, only what a plaintiff believes to be true about those policies." *Harris*, 2025 WL 2044020, at *5.

reasonably infer a 'true municipal policy' was at work." *Thomas v. City of Markham*, 2017 WL 4340182, at *5 (N.D. Ill. Sept. 29, 2017) (evaluating a five-year gap between documented past events and the incident at issue) (citing *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005)). True, each of the other cases were filed 2023 or 2024. But without information about when the underlying events occurred in those cases, it is not possible to assess whether those events were close enough in time to establish a policy or custom in 2023 or 2024.

Finally, to satisfy the third element of "deliberate indifference," Plaintiffs must also allege that the Village was "aware of the risk created by the unlawful widespread custom or practice and failed to take appropriate steps protect plaintiffs." *Fix v. City of Chicago*, 2022 WL 93503, at *3 (N.D. Ill. Jan. 10, 2022). "[S]ituations in which a municipality has knowingly acquiesced in an unconstitutional result of what its express policies have left unsaid" can establish deliberate indifference, if the plaintiff can also show "a prior pattern of similar constitutional violations." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 236 (7th Cir. 2021). A municipality's "continued adherence to an approach that it knows or should know has failed to prevent [unconstitutional] conduct … may establish the conscious disregard for the consequences of their action — the deliberate indifference — necessary to trigger municipal liability." *Williams-Saddler v. Lancaster*, 2024 WL 1677407, at *3 (cleaned up) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997)).

Here, Plaintiffs allege only the following: "The Village of Dolton has an ongoing custom and practice of issuing, denying, and revoking business licenses based on political loyalty to the Mayor." [Dkt. 49, ¶ 46.] This does not plausibly suggest that the Village was on notice of the risk presented by its policies and acted with deliberate indifference when it revoked Plaintiffs' license. Even assuming other lawsuits filed against the Village could provide notice for purposes of deliberate indifference, the amended pleading provides no way of knowing how similar or dissimilar those cases are to this one.

The *Monell* claim is dismissed. Because Plaintiffs already had an opportunity to amend, dismissal is with prejudice. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015).

### D. Tortious Interference with Prospective Business Relations (Count III)

Plaintiffs revive their tortious interference claim under Illinois law. To state this claim, a plaintiff must allege "(1) plaintiff's reasonable expectancy of entering into a valid business relationship; (2) defendant's knowledge of that expectancy; (3) defendant's intentional and unjustifiable interference that induced or caused a breach or termination of the expectancy; and (4) damage to plaintiff resulting from defendant's conduct." *F:A J Kikson v. Underwriters Lab'ys, Inc.*, 492 F.3d 794, 800 (7th Cir. 2007). A plaintiff must plead that he has a business expectancy with a

7

specific third party, as well as an action by the defendant directed toward that third party. *Ali v. Shaw*, 481 F.3d 942, 945–46 (7th Cir. 2007); *Associated Underwriters of Am. Agency, Inc. v. McCarthy*, 826 N.E.2d 1160, 1169 (Ill. App. Ct. 2005).

The court previously explained that, among other things, Plaintiffs failed to allege facts making it plausible to infer the Village's knowledge of any expectancy—that is, there were no facts alleging that the Village was aware of Plaintiffs' outlay of costs in response to getting their business license in February 2024. [Dkt. 43.] The third amended complaint does little to address the deficiencies with this claim. Plaintiffs plead only that they had "a reasonable expectancy in resuming profitable business operations," and that the Village "was directly aware that Plaintiffs had expended significant costs in reliance on the February 2024 license, as evidenced by the Village's own inspection and subsequent approval." [Dkt. 49, ¶¶ 42-43.]

But merely reciting the elements of the claim is not enough to survive dismissal. *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1040 (7th Cir. 2023). Missing are factual allegations about a reasonable expectation of entering into a valid business relationship and with whom. Nor have Plaintiffs alleged facts making it reasonable to infer that the Village intentionally and unjustifiably interfered with an unspecified relationship such that it caused a breach or termination of some expectancy. At best, the amended pleading suggests an interference directed at the Plaintiffs themselves as opposed to a third party. That won't do. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 686–87 (7th Cir. 2014) (affirming dismissal of a tortious interference claim where a defendant did not communicate with a third party); *Galinski v. Kessler*, 134 Ill. App. 3d 602, 607–08 (1st Dist. 1985) (rejecting a tortious interference claim where "the interfering conduct complained of is directed towards the plaintiff as opposed to a third party"). And a tortious interference claim generally requires a party to allege "not merely that the defendant has succeeded in ending the relationship or interfering with the expectancy, but 'purposeful interference'—that the defendant has committed some impropriety in doing so." *Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 371 (Ill. 1998).

Plaintiffs allege none of these things. So, they have failed to state a claim for tortious interference, and this claim is dismissed with prejudice. *Runnion ex rel. Runnion*, 786 F.3d at 520.

### E. Breach of Contract (Count V)

Relevant to the breach of contract claim, Plaintiffs allege that they catered ten separate Village "Tea with the Trustees" events over an unspecified period. [Dkt. 49, ¶ 54.] The Village approved these services and acknowledged their obligation to pay, but on July 18, 2024, Plaintiffs were presented with a back dated check that the bank declined as "stale." [*Id.*, ¶¶ 55–61.] The Village refused to reissue the check or pay. [*Id.*, ¶ 63.]

8

"Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (cleaned up).

The court previously dismissed this claim because Plaintiffs failed, at minimum, to plead the existence of an enforceable oral contract. [Dkt. 43 at 6.] To do so, "a plaintiff must establish offer, acceptance, consideration, and definite and certain terms." *Kolbe v. CZS Holdings LLC*, 2021 WL 4864143, at *4 (N.D. Ill. Oct. 19, 2021) (citing *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996)). Unfortunately, the complaint is again silent on when the oral agreement was formed or when the catering events occurred (not even a year is provided). [*See* Dkt. 49, ¶¶ 54–64.] Still, Plaintiffs allege that the Village was a party to the agreement, that there was an agreed upon rate for the services performed ($8,910 for ten catered events), that unspecified elected Trustees approved these services and acknowledged an obligation to pay, and that the Village issued a bad check in an initial attempt to pay. [*See id.*] Viewing the facts in the light most favorable to Plaintiffs, these allegations permit a reasonable inference of offer, acceptance, and consideration. So, the motion to dismiss the breach of contract claim is denied.

### F. Indemnification (Count VI)

Plaintiffs bring an indemnification claim against Henyard and the Village. They allege that under 745 ILCS 10/2-302, the Village may indemnify its employees for injurious acts committed within the scope of employment. Confusingly, the Village argues that "a complaint must allege a duty to indemnify that arises not from the relative fault of the parties but from the pre-tort relationship of the parties," and that because Plaintiffs identify no such pre-tort relationship, they cannot state an indemnification claim. [Dkt. 68 at 9–10 (citing *Van Jacobs v. Parikh*, 422 N.E.2d 979 (1981)).] To the contrary, Plaintiffs clearly allege that Moore and Henyard were Village employees acting in the scope of employment. [Dkt. 49, ¶¶ 4–5, 65.] The court therefore denies the Village's motion to dismiss Count VI.

## IV. Conclusion

For the reasons stated above, the court grants the Village's motion to dismiss in part. Plaintiffs' First Amendment retaliation claim (Count I) is dismissed without prejudice. The tortious interference claim (Count III), and *Monell* claim (Count IV) are dismissed with prejudice. The motion is otherwise denied.

Enter: 24-cv-11776
Date: January 20, 2026

_____
Lindsay C. Jenkins